## LEWIS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1925.)

No. 6830.

I. **Forgery ⊚⇒27—Indictment not alleging intent to defraud United States held not to charge offense.**

An indictment charging accused with forging payee's indorsement on government check drawn on Treasurer of United States, with intent to defraud payee, and with uttering such forged instrument, states no offense within Penal Code, §§ 148, 151 (Comp. St. §§ 10318, 10321), since the obligation of the government was genuine, and states no offense under Penal Code, § 29 (Comp. St. § 10193), since no allegation of intent to defraud the United States was alleged.

2. **Criminal law ⊚⇒762(2)—Judge's statement to jury as to belief in defendant's guilt after jury had been unable to agree held inopportune.**

Where the jury in a criminal trial reported their inability to agree, and in response to an inquiry of the court stated that no question of law was bothering them, an additional charge by the court that in his opinion accused was guilty was inopportune and calculated to unduly influence jury, notwithstanding the court carefully instructed that its opinion was not binding, but merely advisory.

3. **Criminal law ⊚⇒762(2)—Judge may comment on facts.**

The trial judge may freely comment on the facts, express his opinion thereon, and sum up the evidence; but his comment should be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of fact, should be left free to exercise their independent judgment.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

Holly Lewis was convicted of forging the indorsement on a certain government obliga-

8 F.(2d)—54

tion and uttering the same, and he brings error. Reversed and remanded.

T. H. Davidson, of Muskogee, Okl., for plaintiff in error.

O. H. Graves, Asst. U. S. Atty., of Muskogee, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. The grand jury for the Eastern district of Oklahoma returned against plaintiff in error and another an indictment consisting of two counts. The first charged the defendants therein with having in their possession a certain government obligation, to wit, a certain check, No. 465156, drawn upon the Treasurer of the United States at Muskogee, Okl., by one D. Buddrus, cashier and special disbursing agent for the Five Civilized Tribes, which said check was for the sum of $320, payable to the order of one Billy Davis; that, so having the same in their possession, they did willfully, wrongfully, fraudulently, and feloniously, with intent to defraud the said Billy Davis, payee as aforesaid, forge upon the back thereof a material indorsement and signature, to wit, that of said payee. The second count deals with the same check, and charges the uttering of the same, with intent to defraud Billy Davis, payee as aforesaid. In this count the check, with the forged indorsement, is described as a forged obligation of the government.

The defendant Lewis seasonably attacked both counts of this indictment by demurrer, which was overruled, and exceptions were duly preserved. At the trial which ensued a verdict of guilty upon both counts was returned. The main points raised by the assignments is that the indictment in each count failed to state an offense against the United States, and that the demurrer accordingly should have been sustained. It is conceded that the prosecution in this case must be founded upon one or more of three sections of the Criminal Code: Section 148, formerly section 5414 of the Revised Statutes, and section 151, formerly section 5431, or section 29, formerly section 5421 (Comp. St. §§ 10318, 10321, 10193).

Section 148, which deals with forgery, is as follows:

"Whoever, with intent to defraud, shall falsely make, forge, counterfeit, or alter any obligation or other security of the United

States shall be fined not more than five thou-. sand dollars and imprisoned not more than 15 years.

Section 151, which deals with the uttering of such forged instruments is in the following language:

"Whoever, with intent to defraud, shall pass, utter, publish, or sell, or attempt to pass, utter, publish, or sell, or shall bring into the United States or any place subject to the jurisdiction thereof, with intent to pass, publish, utter, or sell, or shall keep in possession or conceal with like intent, any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than five thousand dollars and imprisoned not more than fifteen years."

The obligations or other securities of the United States contemplated by these two sections are thus defined by section 147 (Comp. St. § 10317):

"The words 'obligation or other security of the United States' shall be held to mean all bonds, certificates of indebtedness, national bank currency, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, which have been or may be issued under any act of Congress."

The check from Buddrus to Davis falls admittedly within this definition. The forgery charged consisted, not in counterfeiting or altering the body of that instrument, but in forging the signature of the payee in the indorsement on the back thereof. The second count charges the uttering of the instrument with such forged indorsement. It was evidently the purpose of the pleader to charge the offenses under sections 148 and 151 aforesaid.

But this court, in Gesell v. United States, 1 F.(2d) 283, has held that the forgery of an indorsement or assignment of a genuine obligation of the United States, as defined in section 147, cannot be prosecuted under sections 148 and 151, supra. Consequently, unless the indictment in its allegations satisfies the requirements of some other provision of the Criminal Code, it must be held insufficient. We are remitted to section 29 of the Code, which is held to apply to a transaction of this nature. That section reads:

"Whoever shall falsely make, alter, forge, or counterfeit, or cause or procure to be false-ly made, altered, forged, or counterfeited, or willingly aid, or assist in the false making, altering, forging, or counterfeiting, any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States, or any of their officers or agents, any sum of money; or whoever shall utter or publish as true, or cause to be uttered or published as true, any such false, forged, altered, or counterfeited deed, power of attorney, order, certificate, receipt, contract, or other writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or whoever shall transmit to, or present at, or cause or procure to be transmitted to, or presented at, any office or officer of the government of the United States, any deed, power of attorney, order, certificate, receipt, contract, or other writing, in support of, or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited, shall be fined not more than one thousand dollars and imprisoned not more than ten years."

[1] Measuring the indictment by the yardstick of this statute, we find that each count falls short in a very important essential. By section 29 the forgery must be committed for the purpose of obtaining or receiving, or of enabling some one else to obtain or receive, from the United States, their officers or agents, any sum of money, and the uttering must be done with intent to defraud the United States. The purpose and intent are made essential ingredients of the crime, and the intent to defraud is not stated generally and comprehensively as in some statutes, notably sections 148 and 151, but is restricted to a specific party, to wit, the United States. This indictment charges no purpose nor intent to obtain money from, nor to defraud, the United States; it contents itself with charging an intent to defraud the payee, Billy Davis. In this respect it is fatally defective.

In further support of our conclusion that sections 148 and 151 cannot be invoked in the case at bar, reference is made to the language of the Supreme Court in Dunbar v. United States, 156 U. S. 185, 193, 15 S. Ct. 325, 328 (39 L. Ed. 390), wherein it is said that former section 5431, now section 151 of the Criminal Code, had for its purpose "the protection of the bonds or currency of the United States, and not the punishment of any fraud or wrong upon individuals."

Error is also assigned to the charge of the court, delivered after the jurors had been out for some time and had declared themselves unable to agree. That part of the charge and the question leading up to it are as follows:

"Is there any question of law bothering you in this case, gentlemen?

"Foreman of the Jury: No, sir; I don't think there is.

"The Court: Well, the court desires to say to you now—understand that you are the judges of the facts, and what I say to you now is not binding on you; it is only advisory to you. I don't think you should have any difficulty in reaching a verdict in this case under the evidence. I feel that the court should have advised you, before you retired, that you should return a verdict of guilty in this case. It does not occur to me there is any dispute about the evidence, unless you believe some of these witnesses, whose evidence is uncontradicted, have misstated the facts. You have the written confession of the defendant, in his own handwriting, that he wrote the name of the payee on this check, and you have the evidence of the payee of the check that he did not authorize it to be done. That was a misappropriation of the money sent to this man by the government. However, you are not bound by what I say in that respect, but the law does authorize me to advise you as to what my judgment is in the case. I am just merely expressing my opinion of what the evidence shows. This is a government check, if that is bothering you. The government had this Indian's funds on hand, and they sent him a check for it, and it was a government check. Now, he was the payee in the check; that is undisputed; then this check was due this Indian that was named as payee in the check. Now, this check doubtless was cashed, and this Indian says he never got the money, nor he didn't authorize anybody to write his name on the back of that check. This defendant, according to the written admission introduced in evidence, did write his name on it, and he says that he knew that the fellow he claims told him to do it was not the payee in the check. Then he had no authority to write this payee's name on that check, and he was unauthorized to do it, and it occurs to me it is a very simple case. So, with this additional instruction, gentlemen, you may retire to consider your verdict further."

[2] This statement, if made in the course of the original charge, safeguarded, as it was, by the caution that the jurors were the judges of the facts, and the views of the court were advisory only, would have been within the province of the court, in view of the conduct of the defendant, as disclosed by the record. Coming at this stage of the trial, however, it was inopportune, and was calculated to carry with it undue influence upon the jury. We should hesitate to reverse this case upon this ground, standing alone; nevertheless we think this criticism should be voiced. In so doing, however, we do not mean to be understood as restricting the legitimate supervisory control of the court in the trial of causes.

[3] We adhere to the rule laid down by this court in Rudd v. United States, 173 F. 912, 97 C. C. A. 462, wherein we said:

"We do not mean to impair in any degree the right of a trial court in both civil and criminal cases to comment upon the facts, to express its opinion upon them, and to sum up the evidence; for that is one of the most valuable features of the practice in the courts of the United States. A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done. But his comments upon the facts should be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment."

For the defects in the indictment above stated, the judgment must be reversed, and the case remanded for further proceedings.

It is so ordered.