## TOMPLAIN et al. v. UNITED STATES.
### No. 5709.

Circuit Court of Appeals, Fifth Circuit.
June 30, 1930.

See, also, 42 F.(2d) 202, 203.

John J. Finnorn and Hugh M. Wilkinson, both of New Orleans, La., and C. A. Morvant, of Thibodaux, La. (Finnorn & Todd and Robert B. Todd, all of New Orleans, La., on the brief), for appellants.

Edmond E. Talbot, U. S. Atty., of New Orleans, La.

Before BRYAN and FOSTER, Circuit Judges, and HOLMES, District Judge.

FOSTER, Circuit Judge.

Appellants, Walton Tomplain, Levi Collins, and Nick Fernandez, were convicted on an indictment which, omitting formal parts, charged that on April 4, 1928, they did "unlawfully, wilfully, knowingly, feloniously and fraudulently import and bring into the United States, contrary to the National Prohibition Act, and in violation of section 813 of the Tariff Act, certain merchandise consisting of 804 cases of alcohol, containing one five gallon tin each and 54 kegs of Islay Malt Scotch whiskey." They were sentenced each to serve 13 months' imprisonment in the Atlanta Penitentiary.

█ The indictment is carelessly drawn, but as it was not demurred to, we may assume that it sufficiently states the offense of unlawful importation under the provisions of section 593(b) of the Tariff Act of 1922 (19 USCA § 497).

The bill of exceptions shows evidence on behalf of the United States tending to prove the following facts: The motorboat Sea Hawk, loaded with the liquor described in the indictment, was seized late at night in Four Mile bayou, which is in the state of Louisiana, by coast guardsmen. Fernandez and one Petit, not indicted, later used as a witness by the government, were on the boat. The seizing officers testified that they recognized Collins escaping from her. Two seizing officers testified that they conducted the Sea Hawk to New Orleans, and that on the way they had a conversation with Fernandez, and asked him where he had come from, and he replied he had come off the Lady Antoinette. The witness Petit testified that, two days previous to his arrest, with other men, none of whom he identified, he went out to the Lady Antoinette, which boat was in the Gulf (her position in the Gulf was not otherwise shown); that he had assisted in unloading from the Lady Antoinette the liquors thereafter seized on the Sea Hawk; that Tomplain had directed said unloading and transportation inland of the liquor; that the first time he saw Fernandez was aboard the Lady

Antoinette. Nolan Tomplain, a brother of Walton Tomplain, testified on cross-examination that some time previous to the seizure of the Sea Hawk (the time was not definitely fixed) he had been in Mexico with Fernandez, and had parted from him there. No part of the cargo was offered in evidence, nor was it shown that it had any distinguishing marks or brands to evidence its origin. The court overruled a motion for a directed verdict at the close of the case. Error is assigned thereto.

█ Under any aspect of the indictment, it was necessary to show that the liquor was brought into the United States from without. It is argued on behalf of the government that, because Fernandez made a trip to Mexico, and was on the Lady Antoinette when the liquor was unloaded from her on to the Sea Hawk, the conclusion must be indulged that he came from Mexico on the Lady Antoinette and acted as her supercargo. Such a presumption is entirely too violent to have any probative force. For all the record discloses, Fernandez may have been one of the unidentified men who went to the Sea Hawk with Petit, or he may have boarded her from some other small boat without having voyaged on her between any two points. Furthermore, the vessel's position in the Gulf was not shown, and there was nothing to indicate her cargo was of foreign origin. She could have been out in the Gulf and yet within the territorial waters of the United States. And her cargo might have originated in the United States. There was no direct evidence before the jury to show that the liquor had actually been brought into the United States from without. In the general charge the court told the jury, substantially in the language of the concluding paragraph of section 593(b) of the Tariff Act of 1922 (19 USCA § 497), with regard to Fernandez, that the mere possession of the liquor unexplained was sufficient to warrant a verdict of guilty. No doubt this misled the jury. The presumption created by the statute does not relieve the government of the burden of showing beyond a reasonable doubt that the merchandise alleged to be unlawfully imported was really brought into the United States from without. Until that burden is sustained, the presumption does not arise. Circumstantial evidence, to sustain a conviction, must exclude every other reasonable hypothesis than that of guilt. Sherman v. United States (C. C. A.) 268 F. 516. It is plain that in this case the proof was not sufficient to sustain the judgment of conviction.

It was error to refuse a directed verdict. As that error requires a reversal, it is unnecessary to discuss the other assignments.

Reversed.