## UNITED STATES v. STANDARD OIL CO. (INDIANA) et al.

### No. 11365.

District Court, W. D. Wisconsin.

Sept. 22, 1938.

W. P. Crawford, of Superior, Wis., John Henry Lewin, Hammond E. Chaffetz, W. B. Watson Snyder, and Grant W. Kelleher, Sp. Assts. to Atty. Gen., and

John J. Boyle, U. S. Atty., of Madison, Wis., for the United States.

William J. Donovan, of New York City, Herbert H. Thomas, of Madison, Wis., J. Edward Lumbard, Jr., Ralstone R. Irvine, and Granville Whittlesey, Jr., all of New York City, and San W. Orr, of Madison, Wis., general counsel for defendants.

Louis L. Stephens, Buell F. Jones, Weymouth Kirkland, David Fisher, and John McInerny, all of Chicago, Ill., for defendants Standard Oil Co. (Ind.) and others.

W. P. Z. German and Alvin F. Molony, both of Tulsa, Okl., for Skelly Oil Co. and another.

Wm. Dewey Loucks and John F. O'Ryan, both of New York City, and E. C. Mead, of Tulsa, Okl., for Barnsdall Refining Corp. and another.

Ralph Horween, of Chicago, Ill., for Globe Oil & Refining Co. (Okl.) and others.

Rupert Thomas, Jr., and Bethuel M. Webster, Jr., both of New York City, for Edward L. Shea and others.

J. C. Denton and John P. Greve, both of Tulsa, Okl., and J. Craig McLanahan, of Baltimore, Md., for Mid-Continent Petroleum Corp. and others.

Don Emery, of Bartlesville, Okl., Amos L. Beaty, of Houston, Tex., Walter L. Barnes., of Des Moines, Iowa, and Rayburn L. Foster, of Bartlesville, Okla., for Phillips Petroleum Co. and others.

Louis Mead Treadwell, of New York City, for Socony-Vacuum Oil Co., Inc., and others.

Goldthwaite H. Dorr, of New York City, for Charles E. Arnott.

James J. Cosgrove and William H. Zwick, both of Ponca City, Okl., and Dan Moody, of Austin, Tex., for Continental Oil Co. and others.

Vinson, Elkins, Weems & Francis and Charles I. Francis, all of Houston, Tex., and Carl N. Hill, of Madison, Wis., for Pure Oil Co. and others.

Samuel A. Mitchell and Truman Post Young, both of St. Louis, Mo., for Shell Petroleum Co. and others.

G. T. Stanford, Roy T. Osborn, and Frederick Wood, all of New York City, for Sinclair Refining Co. and another.

J. H. Marshutz, of Milwaukee, Wis., for Wadhams Oil Co. and another.

576

Charles E. Gately, of New York City, E. L. Wingert, of Madison, Wis., Chas. A. Frueauff, of New York City, and Theo. Brazeau, of Wisconsin Rapids, Wis., for Cities Service Co. and others.

STONE, District Judge.

At the close of the testimony, motions were made on behalf of each of the defendants for a directed verdict. While the Court was of the opinion that in some cases the motions were well taken, the testimony was so voluminous, the exhibits so extensive in number, that it seemed impelling that no ruling on the motion be made until there was opportunity for a thorough study of the evidence, and a careful and deliberate consideration of the law, with the aid of arguments and briefs. The jury had been sequestered from October, 1937 to January, 1938, which included the Thanksgiving, Christmas and New Year's Holidays, and to hold it for a further time sufficient to permit the Court to rule properly, seemed a further hardship which I could not inflict upon the jury, and one which should be avoided if possible. Under these circumstances, and with full knowledge and acquiescence of counsel for all parties, the Court denied the various motions for directed verdict under an explicit reservation of its ruling on the questions of law incident thereto, with the right to pass on the questions of law after verdict, as of the time made, and as the record, upon careful study, might require. Not only was no objection made to this procedure, except by one of the counsel for some of the defendants, but there was no suggestion from anyone that the Court might lack the power to reserve its ruling on these questions of law, or that the practice was in any way out of the ordinary. If any serious question in this respect had been raised, it is obvious that the jury might have been asked to retire until the Court had disposed of the motions. Its convenience would have to yield to the requirement that the Court perform its plain, judicial duty, and not put itself into a position where it would have to take the verdict with but two alternatives, viz., to sentence innocent defendants, or put them to a new trial. American justice recognizes the principle that the protection of the innocent is equally as important as conviction of the guilty.

The Court was in no doubt whatever about the power to reserve its ruling on these questions of law, and to pass thereon after the verdict with the same force and effect as before verdict. Had the practice here followed been as novel and so devoid of judicial power as the Government now claims, it would seem that the Court was entitled to some suggestion to that effect at the time the rulings were reserved. Neither was the question raised on the oral argument on the motions after verdict nor on the briefs filed by Government counsel on the motions after verdict.

Certainly the power as exercised in this case is no broader or different in principle than the admitted power to dismiss before taking a verdict. A question of law does not become a question of fact by an unwarranted submission of the case to a jury. However, in the face of an express reservation of the questions of law involved, such a result is impossible.

The constitutional right of a defendant to a trial by jury requires that all questions of law be decided by the Court and questions of fact by a jury. It is just as important that the defendant be given the benefit of the one as of the other, and if he be denied one or the other, his constitutional right to that extent has been denied.

In the careful and full review of the record and study of the briefs filed on the motions before and after verdict, the Court was definitely of the opinion that as to most of the defendants dismissed by the order of July 19th last, there was no substantial evidence indicating participation in the conspiracy; and that as to others the evidence adduced was clearly as consistent with innocence as with guilt, which raises a question of law for the Court, not one of fact for the jury, and in such circumstances it becomes the duty of the Court to grant the motions for a directed verdict. To do otherwise is clearly error. The following cases hold that where the evidence is as consistent with innocence as with guilt, it is the duty of the Court to direct a verdict for the defendant: Romano v. U. S., 2 Cir., 9 F.2d 522; Van Gorder v. U. S., 8 Cir., 21 F.2d 939; Salinger v. U. S., 8 Cir., 23 F.2d 48; Leslie v. U. S., 10 Cir., 43 F.2d 288; Tinsley v. U. S., 8 Cir., 43 F.2d 890; Parnell v. U. S., 10 Cir., 64 F.2d 324; Nicola v. U. S., 3 Cir., 72 F.2d 780; Paul v. U. S., 3 Cir., 79 F.2d 561; Nosowitz v. U. S., 2 Cir., 282 F. 575.

In the following cases the appellate court, having decided that the motions of the defendant for a directed verdict on the ground of the insufficiency of the evidence or for other legal reasons should have been granted, reversed and remanded without direction for a new trial: Smith v. U. S., 151 U.S. 50, 14 S.Ct. 234, 38 L.Ed. 67; Schaefer v. U. S., 251 U.S. 466, 40 S.Ct. 259, 64 L.Ed. 360; Gebardi v. U. S., 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A. L.R. 370; Grau v. U. S., 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212; Nathanson v. U. S., 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; Nosowitz v. U. S., 2 Cir., 282 F. 575; O'Brien v. U. S., 7 Cir., 51 F.2d 674; Hogan v. U. S., 5 Cir., 54 F.2d 924; United States v. Otto, 2 Cir., 54 F.2d 277; Nazzaro v. U. S., 10 Cir., 56 F.2d 1026; Dolff v. U. S., 7 Cir., 61 F.2d 881; Cherry v. U. S., 7 Cir., 78 F.2d 334; Paul v. U. S., 3 Cir., 79 F.2d 561; Sonzinsky v. U. S., 7 Cir., 86 F.2d 486; Kassin v. U. S., 5 Cir., 87 F.2d 183; United States v. Kind, 2 Cir., 87 F.2d 315; United States v. Buchalter, 2 Cir., 88 F.2d 625 (Sherman Anti-trust violation); United States v. Kaplan, 2 Cir., 89 F.2d 869; Copeland v. U. S., 5 Cir., 90 F.2d 78; Lapadura v. U. S., 3 Cir., 91 F.2d 639; Reiner v. U. S., 9 Cir., 92 F.2d 823; Forte v. U. S., 68 App. D.C. 111, 94 F.2d 236; Czarnecki v. U. S., 3 Cir., 95 F.2d 32; Kauz v. U. S., 5 Cir., 95 F.2d 473; Rader v. U. S., 3 Cir., 95 F.2d 506; Merrill v. U. S., 9 Cir., 95 F.2d 669.

In each of the following cases, the appellate courts, having decided that defendant's motion for a directed verdict for insufficiency of the evidence should have been granted, reversed with direction to dismiss the defendant: France v. U. S., 164 U.S. 676, 17 S.Ct. 219, 41 L.Ed. 595; Romano v. U. S., 2 Cir., 9 F.2d 522; Klee v. U. S., 9 Cir., 53 F.2d 58; United States v. Bonanzi, 2 Cir., 94 F.2d 570.

█ The Court is thoroughly satisfied that the procedure here adopted and now complained of by the Government is not only sound in principle, but is fully supported by an abundance of authorities.

In Collenger v. U. S., 7 Cir., 50 F.2d 345, the Court held that under the ruling in Slocum v. New York Life Insurance Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029, it could not in a criminal case (where no reservation of ruling had been made by the trial court) re-

mand with instructions to dismiss, but was confined to ordering a new trial. A careful study of the Collenger Case does not indicate that it is authority against what was done in the particular circumstances of the case at bar; rather, the contrary seems clear.

The Slocum Case was a civil action. In the majority opinion a careful review of the rules of the common law was undertaken in order to ascertain what was the trial by jury guaranteed and preserved by the Seventh Amendment to the Constitution, U.S.C.A.Const. Amend. 7. The Court came to the conclusion that at the time of the adoption of the Seventh Amendment, the common law did not recognize the power to grant a motion for judgment non obstante veredicto (in a case where the trial court had not reserved a ruling), and that therefore the statute of the state of Pennsylvania which authorized that practice was in conflict with the amendment. There was in that case a dissent by four justices, and an opinion by Mr. Justice Hughes, in which it was pointed out that the well-recognized practice at common law of demurring to the evidence accomplished the same result, and that in many cases cited against the proposition there were really questions of fact to be decided by the jury, which function the trial court had no right to usurp. He said [page 538]:

"The 7th Amendment provides that 'no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law.' But wherein has any matter of fact tried by a jury been re-examined? Concededly, there was no fact to be tried by a jury; the case as made was barren of any such fact; and there being none, there has been no re-examination of it. * * * The trial court in wrongly deciding it, did not convert it into a question of fact; it was not altered by the verdict, but remained the same in its nature,—a question for the determination of the court".

And again:

"But it would seem to be an entire misapprehension to say that trial by jury, in its constitutional aspect, requires the submission to the jury of evidence which presents no question for their decision; and that, although there be no facts for the jury to pass upon, still the judgment which follows as matter of law can be

arrived at only through a verdict. * * * the idea that the jury upon a trial where there is no evidence to sustain a finding by the jury can be reached only through a verdict could not have been entertained at the time the Constitution was adopted.

"To repeat and conclude: All that has been done in the present case could, in substance, have been done at common law, albeit by a more cumbrous method. There has been no invasion of the province of the jury. That conclusively appears from the fact that this court holds that there was no basis for a finding by the jury in favor of the plaintiff. We have here a simplification of procedure adopted in the public interest to the end that unnecessary litigation may be avoided. The party obtains the judgment which in law he should have according to the record. I submit, with deference, that in now condemning this practice, long followed in the courts below, this court is departing from, instead of applying, the principles of the common law, and is extending rather than enforcing the constitutional provision."

In Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636, the court upon a full re-examination of the question reached the conclusion that at common law, at the time of the adoption of the Seventh Amendment, there was a well-recognized practice authorizing the trial court to reserve a ruling on motions for "binding instructions" (directed verdicts) based on the insufficiency of the evidence and other questions of law, pending verdict, and thereafter to give judgment as the state of the record required. The opinion in the Redman Case, taken in connection with the dissenting opinion in the Slocum Case, and the many authorities referred to in this opinion, all seem to approve the procedure here followed. In fact the procedure here employed, under a reservation, is inferentially approved both by the Slocum and the Collenger Cases.

In Baltimore and Carolina Line, Inc. v. Redman, supra, the Court said, referring to the Slocum Case:

"A very different situation is disclosed in the present case. The trial court expressly reserved its ruling on the defendant's motions to dismiss and for a directed verdict, both of which were based on the asserted insufficiency of the evidence to support a verdict for the plaintiff. Whether the evidence was sufficient or otherwise was a question of law to be resolved by the court. The verdict for the plaintiff was taken pending the court's rulings on the motions and subject to those rulings. No objection was made to the reservation or this mode of proceeding, and they must be regarded as having the tacit consent of the parties. After the verdict was given, the court considered the motions pursuant to the reservation, held the evidence sufficient, and denied the motions.

"The Court of Appeals held that the evidence was insufficient to support the verdict for the plaintiff, that the defendant's motion for a directed verdict was accordingly well taken, and therefore that the judgment for the plaintiff should be reversed.

"Thus far we think its decision was right. The remaining question relates to the direction which properly should be included in the judgment of reversal.

"At common law there was a well-established practice of reserving questions of law arising during trials by jury and of taking verdicts subject to the ultimate ruling on the questions reserved; and under this practice the reservation carried with it authority to make such ultimate disposition of the case as might be made essential by the ruling under the reservation, such as nonsuiting the plaintiff where he had obtained a verdict, entering a verdict or judgment for one party where the jury had given a verdict to the other, or making other essential adjustments. * * *

"The Court of Appeals regarded the decision in Slocum v. New York Life Insurance Co. as requiring that the direction be for a new trial. We already have pointed out the differences between that case and this. But it is true that some parts of the opinion in that case give color to the interpretation put on it by the Court of Appeals. In this they go beyond the case then under consideration and are not controlling. Not only so, but they must be regarded as qualified by what is said in this opinion.

"It results that the judgment of the Court of Appeals should be modified by substituting a direction for a judgment of dismissal on the merits in place of the direction for a new trial, and, as so modified, should be affirmed." [page 892.]

It is urged by the Government that the power of reservation in the Redman Case

was pursuant to a state statute applicable under the conformity statute. So was there a state statute in the Slocum Case, which the Supreme Court held violated the Seventh Amendment. The statute was followed because it merely provided a method of procedure in conformity with the rules of the common law at the time of the adoption of the Amendment. That this is true is illustrated·by the following language in the opinion in the Redman Case:

"Some of the states have statutes embodying the chief features of the common-law practice which we have described. The state of New York, in which the trial was had, has such a statute; and the trial court, in reserving its decision on the motions which presented the question of the sufficiency of the evidence, and in taking the verdict of the jury subject to its opinion on that question, conformed to that statute and the practice under it as approved by the Court of Appeals of the state."

The practice prescribed by statute conformed to the practice at common law at the time of the adoption of the Seventh Amendment.

But it is said that the Redman Case (where the court did reserve the right to later rule on the motions) is a civil case, and has no application to practice in the Federal Courts in criminal cases. The proponents of this proposition insist at the same time that the Slocum Case, (where the court made no reservation to rule on the motions) also a civil case, is controlling in this, a criminal case. It is difficult to perceive how one could logically control to the exclusion of the other. The identical question was before the court in each case, and that was the constitutional right of trial by jury. Certainly in the absence of an express ruling to that effect, the court is of the opinion that the Redman Case controls in criminal cases where the situation comes within the doctrine of that case. The Supreme Court expressly modified the holding in the Slocum Case, when it said:

"Not only so, but they must be regarded as qualified by what is said in this opinion."

It follows that the Slocum Case, held binding in the Collenger Case, has been modified so that the practice of reserving rulings on questions of law pending a verdict has been given express approval by the United States Supreme Court.

Since in the case at bar a ruling on the motions for a directed verdict was reserved, not only without objection by the Government but with the acquiescence of all parties, it falls squarely within the doctrine of the Slocum Case, as modified by the Redman Case. There is therefore no doubt in the mind of the Court that the practice adopted in the case at bar has the full support of the Collenger Case properly applied.

It is further urged that since the Conformity Act does not apply in criminal cases and there is no common-law practice in criminal cases authorizing judgments non obstante veredicto, such practice in civil cases does not avail. But the proponents of this doctrine rely largely on the Collenger Case in which the Circuit Court of Appeals of this Circuit squarely held that the Slocum Case, a civil case, was binding.

Nor would it seem that a state statute or practice is material in determining the power of a Federal Court in this respect. The state statute in the Slocum Case was held of no effect, because it authorized a practice not sanctioned at common law; while the same statute was approved in the Redman Case because it did follow the common law. If, however, a state statute or practice were essential, the Court has here followed a course definitely approved according to the practice in the Courts of the State of Wisconsin; State v. Meen, 171 Wis. 36, 176 N.W. 70.

It is asserted that the rules of the Federal Courts as promulgated in 1934 do not recognize a right to give judgment non obstante veredicto in a criminal case. The Court has failed to ascertain that they prohibit reservation of questions of law pending a°verdict; and in the light of the cases cited, and many others, it would seem that if the United States Supreme Court, in promulgating new rules, intended to denounce the practice followed by it in the France and other cases cited above, it would have done so expressly.

By the order of July 19, 1938, which order was amended on September 21, 1938, for the purpose as therein indicated, this Court granted the motions for a directed verdict of those defendants it dismissed, in pursuance to and with the power express-

ly reserved as of the time made, and with the same force and effect as if done before verdict.

It is therefore ordered and adjudged that the application of the Government to expunge that part of the order of July 19, 1938, referred to in its petition, be and the same is hereby denied.